IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JERMAINE COOPER           :       CIVIL ACTION
                                  :
        v.                     :       No. 20-5778
                                  :
CITY OF PHILADELPHIA, et al      :
                                  :

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                              **December 8, 2021**

      Plaintiff Jermaine Cooper brings this *Monell* claim against the City of Philadelphia, alleging constitutional violations during a traffic stop made by Philadelphia Police Officers Kyle Smith and Christopher Ficchi. Cooper alleges that the officers violated his Second, Fourth, and Fourteenth Amendment rights by performing a pretextual stop and seizing his lawfully possessed weapon for the duration of the stop. He further avers that the City of Philadelphia acquiesces to policies, practices and customs that lead to violations of these constitutional rights. The City has moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Cooper has failed to allege a policy or custom promulgated by the City of Philadelphia, the Court will grant this motion without prejudice and with leave to amend.

## BACKGROUND[1]

      Jermaine Cooper works in Philadelphia, Pennsylvania, and has a license to carry a concealed firearm. Defendant City of Philadelphia employs the two individual defendants, officers Kyle Smith and Christopher Ficchi. Cooper's claims against the individual officers are not at issue in this motion to dismiss.

---

[1] In evaluating a motion to dismiss, the court must "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation omitted).

On April 29, 2020, Cooper was in a Walgreens pharmacy and had his weapon lawfully holstered while inside. *See* Am. Compl. ¶ 8, ECF No. 5. Cooper said hello to the officers inside the store and saw them look at his holstered weapon. Cooper then paid for his items, exited the Walgreens, entered his vehicle and drove away. He was stopped by the officers four blocks away. The officers claimed they saw Cooper's "right hand with an object/device on the windshield of the vehicle causing a hazard to both vehicles and pedestrians." *Id.* ¶ 18. Cooper denies this allegation. During the stop, the officers seized Cooper's firearm, held it in their possession, and claimed they were going to issue Cooper a traffic ticket.

Cooper accused the officers of stopping him solely to check his license to carry without any reasonable suspicion or probable cause to stop, frisk, or search him. He then called 911 at the advice of his sister, who is a Philadelphia Police Officer, as she believed the 911 call would be recorded. Thereafter, a sergeant arrived on the scene. Cooper told the sergeant that he was being profiled by the officers and that they had just seen him inside a Walgreens with his gun holstered, which led to his traffic stop. Cooper told the sergeant that he wanted to file a complaint against the officers. *See* Am. Comp. ¶ 29. The sergeant told him that there was nothing wrong with the stop and that he would not receive a ticket. After a private discussion with the sergeant, the officers returned Cooper's gun. *See id.* ¶ 31.

The next day Cooper went to the Philadelphia Police Internal Affairs Division ("IAD") and filed a complaint against the officers. Cooper believes that IAD located a video from Walgreens showing the officers interacting with Cooper inside the store.

Accordingly, Cooper claims that the Philadelphia Police Department has an active custom of stopping citizens whom they believe are carrying firearms and creating a pretextual reason for the stop and frisk without the observation of any other criminal conduct. Further, he avers that the

City of Philadelphia has promulgated this custom among its police force by failing to train and supervise the individual officers regarding gun laws, stop and frisk, reasonable suspicion, and probable cause.

Plaintiff filed the Amended Complaint on March 18, 2021, asserting, inter alia, a *Monell* claim against the City (Count IV). The City filed the instant 12(b)(6) motion to dismiss on April 1, 2021. The Court heard arguments on the motion on July 20, 2021.

**DISCUSSION**

The Court will grant the motion to dismiss with leave to amend because Cooper has not sufficiently pleaded that the City acquiesces to a custom that the policymakers knew or should have known would lead to violations of citizens' constitutional rights. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678).

A municipal employer "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability." *Monell v. N.Y.C. Dep't Soc. Serv.'s*, 436 U.S. 658, 691 (1978). "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation,

or decision officially adopted by the government body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009). In order to recover from a municipality under § 1983, a plaintiff must: (1) identify a policy or custom that deprived him of a constitutionally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *See Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

"Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 787, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom…can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing municipal policy, which can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Cooper's Amended Complaint fails to sufficiently plead that the City of Philadelphia acquiesced in a custom or policy that leads to a violation of citizens' constitutional rights. Therefore, Count IV against the City will be dismissed without prejudice and with leave to amend.

To survive a motion to dismiss, Cooper must "establish a municipal custom *coupled* with causation—i.e. that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations and that this failure, at least in part, led to their injury."

*Bielevicz*, 915 F.2d at 851 (emphasis added). However, Cooper fails to allege any affirmative policy or custom on the part of the City caused his alleged constitutional injury. *See Roman*, 914 F.3d at 798 (stating that "[a] plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries.").

The Amended Complaint does allege that the City "established, knew of, and acquiesced to policies, procedures and customs that Defendants knew or should have known would lead to a violation of citizens' constitutional rights." Am. Comp. ¶ 68, ECF No. 5. But Cooper does not allege that the policymakers were aware of conduct similar to that of the individual defendant police officers, nor does he allege that similar conduct has occurred before. There are also no factual allegations in the Amended Complaint that allow the inference that the named policymakers knew of any constitutional violations. Cooper thus fails to establish any causal connection between the City's actions and the actions that allegedly caused the constitutional violation.

Cooper also fails to sufficiently plead a failure-to-train theory against the City. For failure-to-train claims, a city's failure must reflect "a deliberate or conscious choice" that amounts to "deliberate indifference to the rights of persons with whom the police come into contact." *Roman*, 914 F.3d at 798 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A proper Complaint must factually allege three elements: (1) municipal policymakers knew that employees would confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) that the wrong choice by an employee will frequently cause a violation of constitutional rights. *Id.* (citing *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)).

Cooper's failure-to-train claim fails to establish a pattern of unconstitutional violations that the City deliberately ignored by failing to train its officers. *See Roman*, 914 F.3d at 798 (stating

that a plaintiff need not demonstrate an unconstitutional policy but can "demonstrate that a city's failure to train reflects a deliberate or conscious choice."). While Cooper avers that the City "has intentionally failed to train and supervise police officers," he has not alleged that the City had knowledge of, but failed to address, a pattern of pretextual stops made by the Philadelphia police department, nor has he alleged any pattern of misconduct. He also fails to include factual allegations that would support an inference of a pattern of pretextual stops and misconduct. In the absence of these allegations, Cooper has failed to plead that the City's failure-to-train amounts to "a deliberate or conscious choice." [2] Cooper's Complaint fails to provide sufficient factual support for plausibility under the failure-to-train theory.

**CONCLUSION**

Cooper has failed to sufficiently allege a *Monell* claim against the City of Philadelphia under Federal Rule of Civil Procedure 12(b)(6). Accordingly, the Court will dismiss Count IV of the Amended Complaint, without prejudice and with leave to amend. Plaintiff may file an amended complaint addressing the deficiencies outlined in this Memorandum within thirty days of the docketing of the Order accompanying this Memorandum.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

---

[2] Cooper relies on *Estate of Roman* as evidence that the Amended Complaint sufficiently pleads a failure-to-train claim. In *Estate of Roman*, a consent decree between the City and the United States, along with a newspaper article covering the city's history of police training, provided evidence of the municipality's knowledge of "the types of constitutional violations mentioned in the amended complaint," which were "widespread and causally linked to [the] alleged injury." *Roman*, 914 F.3d at 799. Here, Cooper's factual allegations relate solely to the events of April 29, 2020, and do not allege any other incidents of constitutional violations.